|   |   |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | SOUTHERN DISTRICT OF CALIFORNIA |
| Alvin James SMITH,<br><br>                              Plaintiff,<br><br>v.<br><br>TRANSUNION,<br><br>                              Defendant. | Case No.: 24-cv-1727-AGS-DTF<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS (ECF 17) AND DENYING PLAINTIFF'S VARIOUS REQUESTS (ECF 18, 19, 25, 26, 27, 30, 33)** |

The defense moves to dismiss the second amended complaint, and once again plaintiff's pleading fails to state a claim. But this version is much closer to legal sufficiency, so the Court will provide plaintiff one last chance to amend.

## BACKGROUND

Shorn of its legal conclusions and digressions, Smith's second amended complaint alleges that TransUnion is a "nationwide consumer reporting agency" that "offers various credit reporting and information products and services to businesses and consumers." (ECF 16, at 9.) This time, however, Smith has shifted his claims substantially from being about personally identifiable information to a more traditional basis for a claim against a credit reporting agency: including unverified information on his credit report even after he disputed it.

Smith asserts that after he requested his TransUnion credit report, he noticed it "contained inaccurate information tied to two Navy Federal Credit Union tradelines." (ECF 16, at 12.) Smith details at some length his efforts to contest those tradelines, listing more than a dozen "written dispute communications" he sent to TransUnion about them. (*See id.* at 13–37.) In each case, Navy Federal purportedly "responded" to the communication by designating the information "UN-VERIFIED AS REPORTED" or "UN-VERIFIED AS DELETED REPORTED." (*See, e.g.*, *id.* at 13, 27.) Despite this, TransUnion "failed to update and did not correct Plaintiff's information." (*Id.* at 13.) As a result, Smith "was unable to obtain lower interest rates on" startup capital loans for

business investments and was "forced to take out two high interest loans" instead. (*Id.* at 11.)

Smith consequently alleges that TransUnion violated the federal Fair Credit Reporting Act and California's Consumer Credit Reporting Agencies Act. Specifically, he claims that TransUnion (1) provided inaccurate information after a dispute, (2) violated legal duties as the "furnisher" of inaccurate information, and (3) intentionally inflicted emotional distress on him in violation of California law. (ECF 16, at 10–40.) TransUnion moves to dismiss. (*See generally* ECF 17.) Smith did not file an opposition to the motion to dismiss, although he filed several other papers. (*See* ECF 18; ECF 19; ECF 25; ECF 26; ECF 27; ECF 30; ECF 33.)

## DISCUSSION

### MOTION TO DISMISS

To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All "sufficient factual matter" in a complaint is "accepted as true." *Id.* When plaintiffs proceed without an attorney, like Smith, their pleadings "are to be liberally construed." *Capp v. County of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019). Still, such allegations "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Once again, Smith has "waived" and "abandoned" his current claims because he failed to "address any of [defendant's] arguments concerning them" in his opposition to the motion to dismiss. *See American Ice Mach. Co. v. Modern Ice Equip. Co.*, 763 F. Supp. 3d 1149, 1156 (S.D. Cal. 2025). In fact, he never filed an opposition at all. But the second amended complaint is far closer to stating a claim than the original, so the Court will briefly address defendants' arguments, as Smith will be given one last opportunity to amend his complaint to remedy those defects.

### A. Intelligibility

TransUnion first argues that Smith's second amended complaint must be dismissed as a "shotgun pleading" that violates the federal rules by being too verbose and confusing. (ECF 18, at 10.) A complaint must contain "a short and plain statement showing that the pleader is entitled to relief" with allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). This rule is "not meant to impose a great burden upon a plaintiff." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). But the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up). Typically, "verbosity or length by itself is not a basis for dismissing a complaint." *United States ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Instead, dismissal "is usually confined to instances in which the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (cleaned up).

Like the prior iterations, Smith's second amended complaint is far from a model of clarity. For example, he includes a seemingly pointless introductory section that appears to take aim at the Court's last dismissal order. (*See generally* ECF 16, at 1–7.) He also quotes an entire paragraph from a Pennsylvania district court's 1964 opinion about *summary judgment*, which is not at issue in the pleading stage. (*Id.* at 7.) And he continues to inject confusing, sovereign-citizen-esque jargon, albeit mostly confined to the first several pages: "Plaintiff makes these allegations based on personal knowledge and investigation conducted by and through Alvin-James: Smith who is a natural true man and living being with blood flowing in body [Non- Citizen American National] private being of sound mind comes in equity to the aide of the legally disabled to set the ALVIN JAMES SMITH (captured) free." (*Id.* at 2 (unmatched quotation marks omitted, brackets in original).) Although he disclaims the "sovereign citizen" label in his second amended complaint, courts have universally held that such "theories should be rejected summarily, however they are presented." *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011).

3

Nonetheless, these problems are insufficient to justify dismissal based on a lack of intelligibility. Smith's second amended complaint is "logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which lists the liable Defendants and legal basis therefor." *See Hearns*, 530 F.3d at 1132. Despite its flaws, it is "intelligible and clearly delineate[s] the claims" such that the defense can meaningfully answer them. *See id.* So the Court declines to dismiss the complaint as unintelligible.

**B.     Inaccurate Credit Reporting (Count I)**

In Smith's first cause of action, he claims to have "experienced harm due to factual inaccuracies under both 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i." (ECF 16, at 12.) The former provision requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *see also* Cal. Civ. Code § 1785.14(b) (parallel California provision, which mirrors the federal language requiring credit reporting agencies to "follow reasonable procedures"). The latter provision—15 U.S.C. § 1681i— mandates that, after a "dispute[] by the consumer," a credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A); Cal. Civ. Code § 1785.16(a) (parallel California provision, which directs that, after a dispute, credit reporting agencies must "reinvestigate and record the current status of the disputed information"). Although Smith doesn't explicitly mention either of the California versions of these rules, it's a reasonable inference that he meant to, given that he mentions otherwise irrelevant California Consumer Credit Reporting Agencies Act provisions. (*See generally* ECF 16, at 11–37); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (requiring the Court to draw "reasonable inferences from [the complaint's] content" in deciding "a motion to dismiss").

The problem, however, is that Smith does not allege sufficient facts to show that his credit report was inaccurate. "[T]o sustain either a § 1681e or a § 1681i claim, a consumer must first make a prima facie showing of inaccurate reporting." *Shaw v. Experian Info.*

*Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018). The same is true for the corresponding California causes of action. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (requiring a plaintiff to show the "disputed item was inaccurate" for both Cal Civ. Code § 1785.16 and § 1785.14(b) claims). And the standard for inaccuracy is not trifling: plaintiffs must demonstrate that the information "either is patently incorrect or is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shaw*, 891 F.3d at 756 (cleaned up).

Smith repeatedly insists that his credit report "contained inaccurate information tied to two Navy Federal Credit Union tradelines." (ECF 16, at 12.) But he never identifies those errors. The closest he comes is a somewhat confusing statement that his report included "several inaccuracies including incorrect names and tradelines containing misleading and inaccurate [sic] that did not belong to Plaintiff." (*Id.*) He never reveals what these incorrect names or tradelines were or how they were either "patently incorrect" or so misleading as to "adversely affect credit decisions." *See Shaw*, 891 F.3d at 756 (cleaned up). Without more, Smith has not cleared the plausibility bar, so the § 1681e(b) and § 1681i claims must be dismissed.

Yet Smith's case still has a ray of hope. In the documents attached to his judicial-notice motion—disputes written to TransUnion—Smith mentions that the tradelines in question were the result of "Identity Theft." (ECF 18-33, at 2.) As best the Court can tell, Smith protests that he never owed those amounts to begin with. If that's true, and those amounts are being reported delinquent, then the quoted lines would be "patently false" or sufficiently misleading to hurt his creditworthiness. Since it's not impossible for Smith to state a claim based on facts that it seems he *could* allege, the Court will grant him one final opportunity to amend this claim. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (holding that courts should grant leave to amend when a pleading "can possibly be cured by additional factual allegations").

### C. Furnishing Inaccurate Information to Credit Reporting Agency (Count II)

Smith next contends that TransUnion "routinely furnishes information to credit reporting agencies," did so inaccurately as to him as explained above, and thus has violated "Cal. Civ. Code § 1785.25(a)." (ECF 16, at 38–39.) Although he doesn't mention the federal FCRA provision covering the same behavior, it's a reasonable inference that he intended to. *See* 15 U.S.C. § 1681s-2. But as this Court's previous order explained, "the FCRA imposes this duty on 'sources that provide credit information *to*' credit reporting agencies." (ECF 15, at 4 (emphasis added) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009)).)

Once again, "Smith fails to provide any facts to suggest TransUnion provided information to other credit reporting agencies as a 'furnisher.'" (*See* ECF 15, at 4.) He now identifies one such potential furnisher of information—Navy Federal Credit Union—but "[n]owhere does he explain to what credit reporting agency TransUnion furnished information, nor how that information was inaccurate." (*See id.*) So, yet again, he fails to state a claim under § 1681s-2 or California Civil Code § 1785.25(a). But unlike the inaccurate-reporting claim, nothing in his filings suggests that Smith has additional facts that could cure this problem, which he has already been given notice of. Thus, this furnisher-related claim is dismissed without leave to amend. *See Fidelity Fin. Corp. v. Federal Home Loan Bank of S.F.*, 792 F.2d 1432, 1438 (9th Cir. 1986) (noting that when "the court has already given the plaintiff an opportunity to amend his complaint" on the same point, the "district court's discretion to deny leave to [further] amend is particularly broad").

### D. Intentional Infliction of Emotional Distress (Count III)

Finally, Smith alleges that TransUnion "continues to report inaccurate information for no . . . purpose other than to cause Plaintiff emotional distress." (ECF 16, at 39–40.) He seeks damages for intentional infliction of emotional distress related to his resulting "severe emotional distress and mental anguish including but not limited to anger, frustration, anxiety, embarrassment, and loss of sleep." (*Id.* at 40.)

    "Under California law, the elements of intentional infliction of emotional distress" are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996). "In order to be considered outrageous, the conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 987–88 (N.D. Cal. 2014). "The conduct must be such that it would cause an average member of the community to immediately react in outrage." *Gomon v. TRW, Inc.*, 34 Cal. Rptr. 2d 256, 264 (Ct. App. 1994).

    Because the second amended complaint doesn't even specify the credit report's inaccuracies, Smith has not plausibly alleged that reporting those inaccuracies—or leaving them in the report—was outrageous. For the same reasons as Count I, the Court dismisses Count III but grants leave to amend it one final time, since additional allegations and clarity may cure this problem.

### SMITH'S ADDITIONAL PAPERS

    In lieu of an opposition to the motion to dismiss, Smith filed a series of other papers. (*See* ECF 18; ECF 19; ECF 25; ECF 26; ECF 27; ECF 30; ECF 33.) These include two 250-page requests for judicial notice, attaching several documents he presumably intends to use to prove his claim. (*See generally* ECF 18; ECF 19.) But we're not at the proof stage of this proceeding: the pleadings are unsettled, no summary-judgment motion or trial is imminent, and Smith does not explain why or how these documents—or, more importantly, judicial notice of them—responds to defendant's arguments. Regardless, many of the submitted documents are not eligible for judicial notice, *see* Fed. R. Evid. 201, and there is no need for judicial notice of others because they are mentioned and integral to his amended complaint, *see Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (noting that the "doctrine of incorporation by reference" allows the Court "to consider documents in situations where the complaint necessarily relies upon a document or the

contents of the document are alleged in a complaint" even though it is not attached). In any event, since Smith never explains how any of this responds to defendant's arguments, the requests for judicial notice are denied without prejudice to being raised in the future if necessary.

Next, Smith has filed a series of papers about an apparent alteration of a joint motion. (*See* ECF 25; ECF 26; ECF 27; ECF 30.) As is normal practice under the Local Rules, the motion to dismiss originally had a hearing date for oral arguments. *See* CivLR 7.1(e). Defense counsel filed a purportedly joint motion to appear remotely at that hearing on behalf of both parties. (*See* ECF 22.) According to Smith, after he and defense counsel exchanged emails about the motion, counsel removed Smith's signature from a functionally identical, but slightly different, joint motion to appear remotely and filed one without Smith's approval. (ECF 30, at 7.) Comparing the two versions, it appears that in Smith's signed version, he inserted "*ALVIN JAMES SMITH* (Captured) ('Plaintiff')" into the first line and changed the signature block to:

> Alvin-James: Smith, Sui Juris, In Equity Law
> Non-Citizen American National
>
> By:/s/ Alvin- Jame: Smith, TTEE
> American National Non-Citizen
> By: Alvin- James: Smith, Fiduciary Trustee
> For: ALVIN JAMES SMITH (Captured)
> Without Prejudice/ Without Recourse
> All Rights Reserve

(*See* ECF 30-2, at 4–5.) By contrast, the original (and ultimately filed) version listed him as "Plaintiff Alvin James Smith ('Plaintiff')" on the first line and had a more traditional signature block:

PRO SE PLAINTIFF

By: *Alvin-James:Smith,* TTEE
Alvin James Smith
4351 Hamilton St. #6
San Diego, CA 92014

(*See* ECF 22, at 1, 3.) Otherwise, the substance of the motion and requested relief was the same. The Court ultimately denied that motion as "moot," as it took the matter "under submission" without oral arguments. (*See* ECF 23.)

Despite that, Smith seeks discovery and sanctions arising from counsel's alleged manipulation of his signature. (*See* ECF 27; ECF 30.) Those requests are denied. The parties are admonished to carefully ensure that any representation of a "joint" filing is, in fact, joint. But here—even assuming everything Smith says is true—no substance was misrepresented to the Court and there was ultimately no harm.

Finally, Smith docketed a "notice of suspected court filing tampering," although he does not identify who he believes has tampered with court filings. (*See* ECF 33.) The gist of this document is that he disagrees with how the Clerk of Court has separated and filed some of his submissions and how the Clerk has titled others. (*See, e.g.*, *id.* at 2 (complaining about ECF 29 being a standalone docket entry instead of "Exhibit C" of "Docket Line 26").) That docket issue, however, was already fixed when Smith called the Clerk's Office, so the Court is unclear what else Smith asks the Court to do. His next grievance is so difficult to decipher that the Court is again at a loss as to the relief sought:

> Line 30 on docket as the record reflects July 15, 2025, which contains The Original Wet Ink Signature with Seal By plaintiff was signed JOINT REQUEST TO APPEAR BY VIEDO CONFERENCE AT THE HEARING ON DEFENDANT TRANSUNION LLC MOTION TO DISMISS. However, it is retailed to NOTICE of MOTION and MOTION to Move Under Rule 60(d)(3). Which is a manipulation and altering of court records.

(*Id.* at 3.) And his final objection regarding ECF 26 is similarly hard to parse:

> Docket Line 26: Documentation name was changed from "Joint MOTION for Leave to Appear by Video Conference" filed on Wednesday, July 16, 2025, This entry is not a motion filed by Alvin James Smith with wet blue ink seal , TO NOTICE of Motion to Move Under Rules 60(d)(3) and Under Fed.R.Evid 201 and Fed.R.Civl.P. 11 and Request for Judicial Notice of Adjudicative Facts of the Forged Evidence Document Attached in Exhibits .Filed by Alvin

(*Id.*) Whatever these objections are supposed to mean, docket entries ECF 26 and ECF 30 are substantively identical. Even if the Clerk duplicated the filings or renamed ECF 26, no harm was done. Nor would it matter. Both filings are substantively meritless, regardless of their titles.

## CONCLUSION

TransUnion's motion to dismiss is **GRANTED in part**. Smith's second amended complaint is **DISMISSED**. Smith is granted leave to amend only the claims within Counts I and III. Count II is dismissed without leave to amend. By October 7, 2025, Smith may file a third amended complaint, remedying the identified deficiencies. "If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the

dismissal of the complaint into dismissal of the entire action." *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005). All of Smith's other requests are **DENIED**.

Dated: August 26, 2025

Hon. Andrew G. Schopler
United States District Judge